UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 22-CR-97 (RCL) |
| JAMES FOREMAN : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons set forth below, the Government respectfully requests that the Court sentence the defendant to a term of 10 years' incarceration, followed by five years of supervised release, as outlined in the plea agreement and previously agreed to pursuant to Rule 11(c)(1)(C). In support of this sentence, the government states the following.

**FACTUAL BACKGROUND**

In the time leading up to June 1, 2021, the defendant, James Foreman, was romantically involved with an individual with the initials E.M. On June 1, 2021, E.M. and the defendant were in the defendant's vehicle near the Deanwood Metro Station in Washington, D.C. The defendant was driving. E.M. and the defendant got into a verbal dispute over the status of their relationship and E.M. got out of the defendant's car with her belongings and attempted to walk away. The defendant began to follow E.M. in his vehicle. Shortly thereafter, the defendant got out of his car and began to follow E.M. on foot. E.M. attempted to get away from the defendant and told him to leave her alone.

As the defendant followed E.M., the two approached the vicinity of 1449 Olive Street, N.E., Washington, D.C. The defendant began jogging behind E.M. The defendant then reached for

1

his pocket, pulled out a loaded gun, and shot E.M. in the legs. The bullet entered and exited E.M.'s legs.

E.M. fell. The defendant then took the firearm he had used to shoot E.M. in the legs and struck her in the face with it, causing injury to her face. The gun was silver and pink, had black spray paint on it, and had electrical tape around the handle and the bottom of the clip.

After shooting E.M. in the legs and striking her in the face with the firearm, the defendant demanded that E.M. leave the area with him. E.M. complied out of fear that the defendant would shoot her again or otherwise attempt to kill her. The defendant took E.M. into his vehicle and drove her across state lines to Virginia. E.M. asked the defendant to take her to the hospital. The defendant initially told E.M. that he would, but later refused.

At all times between June 1, 2021 and June 10, 2021, the defendant kept E.M. with him against E.M.'s will. The defendant did so for the purpose of avoiding law enforcement and keeping E.M. under his custody and control. The defendant told E.M. that he would kill her and then kill himself if she left. He also led her to believe that if she escaped, he would commit suicide.

The defendant drove E.M. to locations in Virginia, Maryland, North Carolina and the District of Columbia against her will. The defendant and E.M. stayed with different acquaintances of the defendant, including the defendant's mother. The defendant made E.M. tell his mother that E.M. was shot by someone else.

The defendant was aware that the police were looking for him and E.M. during the aforementioned time period. He intentionally acted to avoid being intercepted by law enforcement. In doing so, the defendant communicated with police and directed E.M. to communicate with the police via the defendant's cell phone in his presence. When E.M. spoke with law enforcement on the phone at the defendant's direction, the defendant told her what to say to them, including the

assertion that she was not injured. The defendant led E.M. to believe that, had she told law enforcement the truth, the defendant would have shot her, killed her, or killed himself. At times when E.M. spoke with police on the phone, the defendant had in his possession the gun he used to shoot E.M. on June 1, 2021. Finally, on June 10, 2021, after speaking with law enforcement, the defendant allowed E.M. to leave his presence, and sent her to the First District Precinct in an Uber. E.M. thereafter received treatment at George Washington University Hospital for her injuries.

In the course of the investigation, law enforcement recovered a silver and pink handgun with black spray paint on it and electrical tape around the handle and bottom of the clip from a bag inside of the garage of the home of Robert Burton, located in Severn, Maryland. The defendant and E.M. had stayed at this location on select dates between June 1, 2021 and June 10, 2021.

The gun was a Taurus PT 738, 380 caliber handgun with no serial number, containing six rounds of Blazer 380 Auto ammunition. The gun was found in a bag with other items, including mail matter in the name of the defendant, clothing, bandages, additional rounds of ammunition, and an additional firearm magazine. DNA testing from swabs taken from the magazine which was attached to the Taurus PT 738 was interpreted as originating from one individual. The DNA results from this item were 54 million times more likely if the defendant was a contributor than if an unknown, unrelated person was a contributor. Further, ballistics testing confirmed that a bullet casing recovered from 1449 Olive Street N.E., Washington, D.C. after the defendant shot E.M. was expelled from this gun.

**DEFENDANT'S SENTENCING GUIDELINES RANGE**

The defendant pled guilty to Kidnapping While Armed, in violation of 22 D.C. Code § 2001, 4502(1) (2001 ed.). The parties agreed that the sentence in this case will be determined by the Court, pursuant to the factors set forth in the Voluntary Sentencing Guidelines for the District

of Columbia. The parties agree that Kidnapping While Armed is a "Group 3" offense under the D.C. Voluntary sentencing guidelines, and that the defendant's criminal history category is "C". The parties further agree that this combination results in a guidelines range of 114 months to 204 months of incarceration and a term of supervised release of 5 years.

**SENTENCING FACTORS UNDER 18 U.S.C. § 3553 and 24 D.C. CODE § 403.01(a)**

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(I) issued by the Sentencing Commission….; and

(II) that, . . . are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement—

> > (A) issued by the Sentencing Commission … and
>
> > (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Further, District of Columbia law mandates that a judge impose a sentence that: "(1) Reflects the seriousness of the offense and the criminal history of the offender; (2) Provides for just punishment and affords adequate deterrence to potential criminal conduct of the offender and others; and (3) Provides the offender with needed educational or vocational training, medical care, and other correctional treatment." D.C. Code § 24-403.01(a). In addition, the sentencing judge may consider a wide variety of information as to a defendant's background, character, and conduct, criminal or otherwise, in determining the proper punishment for a defendant. Guideline 6.3; *Roberts v. United States*, 445 U.S. 552 (1980); *Powers v. United States*, 558 A.2d 1166 (D.C. 1991) (sentencing judge may examine any reliable evidence, including evidence not introduced at trial and uncharged crimes; trial court should obtain "fullest information possible" concerning defendant's life and characteristics).

The sentencing judge has wide discretion in sentencing and "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972). *See also Collins v. United States*, 631 A.2d 48, 51 (D.C. 1993) (sentencing court "has broad discretion to review relevant matter, verified or not, within constitutional limits.") The sole limitation is that

the data the Court considers have sufficient indicia of reliability. *Harris v. United States*, 612 A.2d 198, 208 (D.C. 1992).

Finally, "[a]n important function of the corrections system is the deterrence of crime. The premise is that by confining offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional crimes." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

## SENTENCING RECOMMENDATION

The offense committed by the defendant is a serious one: he kidnapped an intimate partner at gunpoint, shooting her in the course of the kidnapping. Below, the government discusses its recommendation of a 10 years of incarceration and five years of supervised release in the context of the considerations enumerated in 18 U.S.C. § 3553(a) and 24 D.C. Code § 403.01(a).

### Nature of the Offense and Characteristics of the Defendant

The defendant has a number of prior convictions, albeit dated. As to his prior felony convictions, the defendant was twice convicted of Possession with Intent to Distribute Oxycodone in D.C. Superior Court cases 2011-CF2-2659, for which he was sentenced to 90 days incarceration, and 2006-CF2-18296, for which he was sentenced to 18 months' probation. He was also convicted of additional felonies in 2006, including Attempted Distribution of a Controlled Substance in 2005-FEL-5966 and Unauthorized Use of a Vehicle in 2004-FEL-5351. Of particular note in this case, the defendant has a prior conviction to a domestic violence offense in case 2008 DVM 472. In that case, the defendant was convicted of Simple Assault and sentenced to 120 days incarceration, stemming from an incident where he punched his then-significant other multiple times in the face, head, and body.

The defendant's crime in this case was not spontaneous and was also directed against an intimate partner. Not only did the defendant use a gun to kidnap and hold the victim over an extended period of time, but he shot her in the legs to facilitate the kidnapping. The defendant's actions during the offense show a complete disregard for the autonomy, physical safety and mental wellbeing of others.

## Need for the Sentence Imposed

The sentence requested by the Government is necessary to "reflect the seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The defendant's conduct of possessing and using a loaded gun, reflects a disregard for the safety of others, his own safety, and his own ability to remain in the community. The government's requested sentence would provide a significant period of incarceration that seeks to prevent and deter the defendant from committing future crimes, as well as the maximum available period of supervised release to offer continued deterrence from criminal conduct and ensure a successful transition back to the community upon his release.

The government's requested sentence is reasonable, as it strikes the balance between considering the defendant's background and his decision to accept responsibility in this matter. Despite his dated criminal history, his conduct warrants a significant period of incarceration, as well as a period of supervised release to ensure his adjustment to living in the community. This offense will constitute the defendant's first significant period of incarceration. The government's

recommendation of 10 years reflects the seriousness of the offense and his conduct, while taking into account his dated criminal history and personal factors.

## CONCLUSION

The Government's recommended sentence – agreed upon by the parties pursuant to Rule 11(c)(1)(C) – appropriately balances the sentencing factors applicable to this case. For the foregoing reasons, the Government requests that the Court sentence the defendant, James Foreman, to a total sentence of 120 months of incarceration, followed by five years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   */s/ Meredith E. Mayer-Dempsey*
Meredith E. Mayer-Dempsey
N.Y. Attorney No. 5213202
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, DC 20530
Phone: (202) 252-7259